UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IRONSHORE INDEMNITY, INC. | § § | |
| Plaintiffs | § § | |
| v. | § | CASE NO: __4:12-cv-2850__ |
| JOHN M. O'QUINN & ASSOCIATES, PLLC, D/B/A THE O'QUINN LAW FIRM, ABEL MANJI, JOHN M. O'QUINN & ASSOCIATES, L.L.P., and T. GERALD TREECE, INDEPENDENT EXECUTOR AND REPRESENTATIVE OF THE ESTATE OF JOHN M. O'QUINN, DECEASED | § § § § § § § § § § | |
| | § | ACTION FOR |
| Defendants | § | DECLARATORY RELIEF |

## IRONSHORE'S ORIGINAL COMPLAINT

This is an insurance coverage dispute. Plaintiff, Ironshore Indemnity, Inc., ("Ironshore") files this Original Complaint seeking a declaratory judgment that its insurance Policy No. 000705200 (the "Ironshore Policy") provides no insurance coverage for Defendants with respect to the *House* Lawsuit, described below. In support, Ironshore respectfully shows the following:

### I.  PARTIES

1.  Ironshore is a Minnesota corporation with its principal place of business in New York, New York. Ironshore issued a claims-made Excess Lawyers Professional Liability Insurance Policy with a policy period from September 26, 2010, to September 26, 2011, to John M. O'Quinn & Associates, P.L.L.C. and The O'Quinn Law Firm ("the Ironshore Policy").

2.  Defendant, John M. O'Quinn & Associates, P.L.L.C., d/b/a The O'Quinn Law Firm, is a Texas Professional Limited Liability Company with its principal place of business in Houston, Texas. It may be served with process by service upon its registered agent David L. Giffis at Crain, Caton & James, 1401 McKinney Street, Suite 1700, Houston, Texas 77010.

3.     Defendant John M. O'Quinn & Associates, L.L.P., was merged into John M. O'Quinn & Associates, PLLC which has its principal place of business in Houston, Texas and may be served with process upon its registered agent David L. Giffis at Crain, Caton & James, 1401 McKinney Street, Suite 1700, Houston, Texas 77010.

4.     Defendant T. Gerald Treece is a citizen of Texas and the Independent Executor and Representative of the Estate of John M. O'Quinn, deceased.  Mr. Treece may be served with process at 2300 Lyric Center, 440 Louisiana Street, Houston, Texas 77002.

5.     Defendant Abel Karim Manji is an individual who presently resides in Harris County, Texas where he may be served with process at 4314 Mildred St., Bellaire, Texas 77401-5206.  During times relevant to this lawsuit, Mr. Manji did business in the State of Texas as an attorney at the O'Quinn firm.

## II.     JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201 because complete diversity exists between the parties, the amount in controversy exceeds $75,000 exclusive of interest and costs, and Ironshore seeks declaratory relief pursuant to 28 U.S.C. § 2201.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district and the *House* Lawsuit filed by O'Quinn's former clients with claims for alleged exposure to silica is pending within this District.

8.     The Court has personal jurisdiction over each of the Defendants because each is either a resident of Texas and/or has done business in the State of Texas during periods relevant to this lawsuit.

9. For convenience, John M. O'Quinn & Associates, P.L.L.C., d/b/a The O'Quinn Law Firm and John M. O'Quinn & Associates, L.L.P are referred to herein simply as "O'Quinn".

### III.   SUMMARY OF FACTS

10. **The Ironshore Policy.**  In 2010, Ironshore issued the Ironshore Policy, Policy No. 000705200, as an excess liability insurance policy, with a policy period from September 26, 2010 to September 26, 2011, and the named insured(s) "John M. O'Quinn & Associates, P.L.L.C. The O'Quinn Law Firm".  The Ironshore Policy is hereby incorporated by reference.

11. Among other things, the Ironshore Policy provides that "Unless otherwise provided in the followed policy, this policy is a claims made policy which covers only claims first made against the insureds during the policy period."

12. **The Interstate Followed Policy.**  The Ironshore Policy identifies the "followed policy" as Policy No. CLX-1001760, issued by Interstate Fire & Casualty Company ("Interstate"), with the same named insured(s) "John M. O'Quinn & Associates, P.L.L.C.; The O'Quinn Law Firm" (hereinafter, the "Interstate Followed Policy"). Among other things, the Interstate Followed Policy provides that coverage extends only to claims "first made against the Assured and reported to the Underwriters during the Period of Insurance . . .,"and that there is no coverage for any Claim whose "act, error or omission or related acts, errors or omissions" have been the subject of prior notice "to the insurer of any other policy in force prior to the effective date of this policy."

13. **The House Lawsuit.**  In 2011, the *House* Lawsuit, Cause No. 392,247-404, *In Re Estate of John O'Quinn, Deceased* was filed and is now pending in the Probate Court No. 2 of Harris County, Texas.[1]  Subsequently, hundreds of intervenors joined as plaintiffs.

---

[1] Originally the lawsuit was filed as Cause No. 2011-2088, *Tory House et al v. The O'Quinn Law Firm, John M. O'Quinn & Associates, L.L.P., T. Gerald Treece Representative of the Estate of John M. O'Quinn, Deceased and*

14. The pleadings of plaintiffs and intervenors (hereinafter, simply the "*House* Plaintiffs") in the *House* Lawsuit allege that:

   a. O'Quinn represented the *House* Plaintiffs regarding their claims of alleged silica related injury;

   b. O'Quinn engaged in various acts and omissions that resulted in loss to the *House* Plaintiffs, as summarized below;

   c. O'Quinn had occupational and silica exposure histories of the *House* Plaintiffs recorded by an O'Quinn lawyer, employee or representative, rather than a medical professional;

   d. O'Quinn retained medical professionals to diagnose the *House* Plaintiffs, but falsely advised the professionals that the patients' histories were taken by a physician;

   e. in June 2005, O'Quinn received an order from United States District Judge Jack holding that the medical professionals' diagnoses of O'Quinn's silica clients were unreliable and inadmissible because they were founded upon O'Quinn's false advice (which O'Quinn should have known was false because its lawyers or representatives – not a physician – took the histories);

   f. as early as 2003, O'Quinn's charged excessive litigation expenses to the *House* Plaintiffs' out of their settlement funds;

   g. as early as 2003, O'Quinn began mishandling proceeds of settlements from Halliburton, Clemtex, Sandstorm, and Moldex among others;

   h. as early as 2004, O'Quinn knew that numerous silica clients' cases had been improperly dismissed, before releases were signed or settlements paid;

   i. in 2004, O'Quinn disbursed settlement funds to the wrong clients; and

   j. at dates before 2010 O'Quinn prepared various internal memos reflecting O'Quinn's knowledge of the foregoing acts, omissions and other matters.

15. In sum, the *House Lawsuit* alleges that O'Quinn knew, or should have known, that its acts or omissions had resulted in loss to the *House* Plaintiffs that occurred, or was in progress, at dates <u>before</u> the Ironshore Policy was issued and before the policy period.

---

*Abel Manji,* in the 113th District Court of Harris County, Texas.  It was subsequently transferred from the District Court to the Probate Court.

16.     Acts and omissions of O'Quinn that are presently alleged by the *House* Plaintiffs, and/or "related acts, errors or omissions", were reported by O'Quinn to both Interstate and Lloyd's of London (hereinafter, "Lloyd's") with respect to policies of insurance issued by such insurers <u>and</u> in force prior to the policy period of the Ironshore Policy.

17.     As a result of the foregoing notices to Interstate and Lloyd's, both of these insurers have determined that the "Claim" alleged in *House* was made and reported during Lloyd's 2005-2006 policy period and during Interstate's September 26, 2009 – September 26, 2010 policy period.

18.     Interstate and Lloyd's have agreed to provide a defense to O'Quinn in *House* under their respective policies that were in force <u>prior</u> to the policy period of the Ironshore Policy.

19.     Ironshore has sent O'Quinn letters reserving all of Ironshore's rights under the Ironshore Policy.

20.     Despite the foregoing, the *House* Plaintiffs have made settlement demands upon O'Quinn and endeavored to implicate and/or obligate the Ironshore Policy in the resolution of such demands.

21.     Accordingly, Ironshore hereby exercises its legal right to seek a declaration from this Court as to whether the Ironshore Policy provides any coverage to Defendants for the claims alleged in the *House* Lawsuit.

### IV.     CLAIMS FOR DECLARATORY RELIEF

22.     Ironshore incorporates by reference all of the facts stated above, including the terms of the Ironshore Policy and the Interstate Followed Policy, and hereby seeks the Court's determination of all issues that may be in dispute between the parties, and a final judgment declaring the Court's resolution of each, including the following:

a.  Whether the "Claim" asserted by the *House* Lawsuit was first made and reported during the period of the Ironshore Policy and, if not, a declaration that the *House* Claim is not covered by that policy;

b.  Whether the acts, errors or omissions alleged by the *House* Claim, or related acts, errors or omissions, were the subject of prior notices to other insurers with policies in effect <u>before</u> the effective date of the Ironshore Policy and, if so, a declaration that the *House* Claim is <u>not</u> covered under the terms of the Ironshore Policy;

c.  Whether the loss alleged by the *House* Claim is barred, in whole or part, by the fortuity, known loss and/or loss in progress doctrine and, if so, a declaration that it is not covered by the Ironshore Policy;

d.  Whether the *House* Claim and/or any loss alleged by the *House* Claim is uninsurable as a matter of law and, if so, a declaration that it is not covered by the Ironshore Policy;

e.  Whether Exclusion (j) in the Interstate Policy bars the *House* Claim, or any loss asserted therein, in whole or in part and, if so, a declaration to such effect; and

f.  Whether any other provision of the Ironshore Policy, or the Interstate Followed Policy, bars or limits the *House* Claim or any loss alleged therein and, if so, a declaration to such effect.

## V.   CONCLUSION AND PRAYER

Pursuant to 28 U.S.C. § 2201, Ironshore requests that the Court enter a declaration as requested above, and afford Ironshore such other and further declarations and relief as may be just and necessary for Ironshore to secure full and complete relief with respect to the *House*

Claim and the Ironshore Policy. Ironshore also asks that it recover all costs, fees, damages, and such other and further relief to which it may be justly entitled.

                                                Respectfully submitted,

                                       ___/s/ Jeffrey R. Parsons_____
                                       Jeffrey R. Parsons
                                       Texas State Bar No. 15547200
                                       Federal Id No. 2411
                                       1300 Post Oak Boulevard, Suite 2500
                                       Houston, Texas  77056
                                       (713) 623-0887 – Telephone
                                       (713) 960-1527 – Facsimile
                                       jparsons@bmpllp.com

                                       Attorney in Charge for Plaintiff

Of Counsel:

BEIRNE, MAYNARD & PARSONS, L.L.P.
Pamela C. Hicks
Texas State Bar No. 24007002
Federal Id No. 23061
phicks@bmpllp.com
Meagan P. Wilder
Texas State Bar No. 24076769
Federal Id No. 1550940
mwilder@bmpllp.com
1300 Post Oak Boulevard, Suite 2500
Houston, Texas  77056
(713) 623-0887 – Telephone
(713) 960-1527 – Facsimile