| | | |
|---|---|---|
| Ironshore Indemnity, Inc., | § § § | |
| Plaintiffs, | § § | |
| versus | § § | Civil Action H-12-2850 |
| John M. O'Quinn & Associates, PLLC, et al., | § § | |
| Defendant. | § § | |

# Opinion on Summary Judgment

1.  *Introduction.*

    An insurer says that it does not have a duty to defend its insured because the claim is excluded from the policy. It says that the insured knew about the claim before it sought coverage. The insured says that the claim is not excluded because the firm only knew about some of the claims. For this reason, the insurer does not have a duty to defend.

2.  *Background.*

    In the early 2000s, John M. O'Quinn & Associates, LLP, represented workers with silicosis. In 2011, a group of these clients sued the law firm for malpractice in the *House* suit. Other clients have joined the suit, and it now has more than 500 members.

    In 2006 and 2010, the firm told its insurers about potential claims from its representation of workers in the silicosis cases. The firm has $15 million in coverage for 2005-2006 and $15 million for 2009-2010.

    In 2010, Ironshore Indemnity, Inc., issued the firm an excess-liability policy for September of 2010 through September of 2011 with a $5 million limit. The primary policy for 2010 to 2011 – issued by Interstate Fire & Casualty Company – has a $10 million limit, and the first-excess policy – issued by Executive Risk Indemnity, Inc. – has a $5 million limit.

    On June 25, 2014, the court denied O'Quinn's motion to dismiss.

3.  *Defense.*

The *House* suit represents only a small group of O'Quinn's former silicosis clients. Many more clients have since filed malpractice suits against O'Quinn for the same or similar reasons. O'Quinn knew or should have known that more lawsuits would be brought against them after the *House* suit.

O'Quinn says that the policy's prior-notice exclusion does not eliminate Ironshore's duty to defend because the plaintiffs in the *House* suit brought a wide range of claims. They say that Ironshore cannot treat the entire *House* suit as a unified claim or set of related claims within the meaning of their policy. O'Quinn says that Ironshore cannot use the exclusion to cover all of the defendants, because each defendant has their own separate case against O'Quinn. Because each defendant has their own claim against O'Quinn, they say that they did not know about each claim against them, and therefore, the policy exclusion is not triggered.

Ironshore is not liable to defend O'Quinn because an exception in its policy unambiguously excludes coverage for known claims. O'Quinn knew about the *House* suit and sent letters to its insurers about settlements before the Ironshore policy issued. O'Quinn did not receive coverage from Ironshore until years after the *House* suit.

The contention that O'Quinn knew about some, but not all silicosis cases is disingenuous at best and logically impossible. As soon as one of its former clients sued it, O'Quinn knew or should have known about similar claims in other cases.

4.  *Conclusion.*

Ironshore does not have a duty to defend O'Quinn in any claims brought against them in regards to the *House* suit, or any related silica matter. O'Quinn acted deliberately and dishonestly with all of its prior silicosis clients and had clear prior knowledge of its wrongful actions.

Signed on August 31, 2015, at Houston, Texas.

Lynn N. Hughes
United States District Judge